# EXHIBIT B

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT, made this __10th__ day of June, 2010 (the "Effective Date"), is between COTTMAN TRANSMISSION SYSTEMS, LLC ("COTTMAN"), and AAMCO TRANSMISSIONS, INC. ("AAMCO")(collectively, "FRANCHISORS"), on the one hand, and, on the other hand, Michael Gano ("Gano"), MG Automotive, Inc. and 412 Automotive, L.P. ("412 Auto") (collectively, "FRANCHISEES").

WHEREAS, COTTMAN, as franchisor, and FRANCHISEES, are parties to a License Agreement, dated December 16, 2008, enabling FRANCHISEES to own and operate a Cottman Transmission Center located at Route 136, West Newton Road, Greensburg, PA (the "Greensburg License Agreement"). The Cottman Transmission Center in Greensburg is hereinafter referred to as the "Greensburg Center".

WHEREAS, AAMCO, as franchisor, and FRANCHISEES, are parties to a Franchise Agreement, dated December 11, 2007, enabling FRANCHISEES to own and operate an AAMCO Transmission Center located at 1669 Oakland Avenue, Indiana, PA (the "Indiana Franchise Agreement"). The AAMCO Transmission Center in Indiana, PA is hereinafter referred to as the "Indiana Center".

WHEREAS, on March 4, 2010, COTTMAN conducted an unannounced audit of the Greensburg Center and, among other things, discovered documentation revealing that gross sales at the Center were being underreported to COTTMAN and that franchise fees and other fees were being underpaid to COTTMAN by FRANCHISEES in violation of Section 7.a. of the Greensburg License Agreement.

WHEREAS, the parties now desire to resolve any disputes between them.

NOW, THERFORE, for good and valuable consideration, and with intent to be legally bound, the parties agree as follows:

1. **Payment to COTTMAN:** FRANCHISEES agree to pay to COTTMAN the sum of Twenty five thousand dollars ($25,000) (the "Payment Amount") to compensate COTTMAN for unpaid license fees associated with underreporting at the Greensburg Center. The Payment Amount shall be tendered as follows:

   a. An initial payment of Five thousand dollars ($5,000.00) payable upon execution of this Agreement, and Five thousand dollars ($5,000.00) on or before June 30, 2010; and

   b. Fifteen thousand dollars ($15,000.00) in the form of a Promissory Note bearing zero percent (0%) interest, payable in two (2) consecutive monthly installments of one thousand dollars

($1,000.00) commencing July 15, 2010, with the remaining balance of Thirteen thousand dollars ($13,000.00) due on September 15, 2010. Notwithstanding the foregoing, should either of the Centers be sold prior to September 15, 2010, the entire remaining balance shall become due and payable to COTTMAN. The said Promissory Note is attached hereto at Exhibit "A".

2.  **Forbearance on Termination**:  Subject to the terms herein, COTTMAN agrees to forbear on immediately terminating the Greensburg License Agreement as provided under Section 19.a.ii. In consideration for COTTMAN's agreement to forbear, FRANCHISEES agree as follows:

a.  FRANCHISEES shall make good faith efforts to sell both the Greensburg Center and the Indiana Center (collectively, the "Centers") to bona fide purchaser(s) acceptable to FRANCHISORS. FRANCHISEES understand and agree that the purchaser(s) of the Centers must purchase the Centers as franchise locations and must execute the FRANCHISORS's respective then current franchise agreement, and comply with the respective FRANCHISORS' requirements.

b.  FRANCHISEES shall accept any bona fide offer of One hundred fifty thousand dollars ($150,000.00) or more to purchase the Greensburg Center.

c.  FRANCHISEES shall accept any bona fide offer of Ninety thousand dollars ($90,000.00) or more to purchase the Indiana Center.

d.  Until such time as the Centers are sold pursuant to the terms of this Agreement, FRANCHISEES shall strictly comply with the terms of the Greensburg License Agreement and the Indiana Franchise Agreement (collectively, the "Franchise Agreements") including, but not limited to, reporting all sales of the Centers and remaining current on all outstanding amounts due and owing by FRANCHISEES to FRANCHISORS pursuant to the Franchise Agreements.

e.  In the event FRANCHISEES are unable to achieve a sale of either of the Centers on or before September 1, 2010 (or such later date as FRANCHISORS, in their sole discretion, may allow), or fail to comply with any other provision of this Agreement or the Franchise Agreements, FRANCHISORS shall without further notice to FRANCHISEES, be entitled to immediately terminate the Franchise Agreements and pursue such remedies available to them under the Franchise Agreements and at law.

3.  **Release of Franchisors**:  FRANCHISEES hereby irrevocably and unconditionally remise, release, and forever discharge FRANCHISORS from all, and all manner of, actions, causes of actions, suits, debts, claims and demands, accounts, bonds, covenants, contracts, agreements, and judgments, whatsoever in law and equity, which FRANCHISEES now have, ever had, or may hereafter have, own, hold, claim or have to own or to hold against FRANCHISORS, including but not limited to, those based upon, related to or connected with the Centers. Without limiting the

2

generality of the foregoing in any respect, FRANCHISEES hereby irrevocably and unconditionally remises, releases and forever discharges FRANCHISORS from any and all claims and causes of action, known or unknown or unanticipated at the time this Agreement was executed, which arose from or are based upon or related to the aforesaid or some part or aspect thereof, from the beginning of the world to the date of this Agreement, which FRANCHISEES ever had, now have or hereafter may have for or by reason of any cause, matter or thing whatsoever. FRANCHISEES acknowledge that there is a risk that, subsequent to the execution of this Agreement, additional claims or causes of action may be discovered or arise, which were unknown or unanticipated at the time this Agreement was executed, including without limitation unknown or unanticipated claims or causes of action, which arose from or are based upon or related to the aforesaid or some part or aspect thereof, and which if known to FRANCHISEES on the date of the execution of this Agreement would have materially affected the decision to execute this Agreement, but which unknown risk or claim FRANCHISEES hereby assume and expressly agree that this Agreement, and the release contained herein, applies thereto.

4.    **Release of Franchisees**:  FRANCHISORS agree that, expressly contingent upon the receipt by COTTMAN of the Payment Amount and the complete satisfaction of the obligations under this Agreement by FRANCHISEES, FRANCHISORS irrevocably and unconditionally remise, release, and forever discharge FRANCHISEES from all, and all manner of, actions, causes of actions, suits, debts, claims and demands, accounts, bonds, covenants, contracts, agreements, and judgments, whatsoever in law and equity, which FRANCHISORS now have, ever had, or may hereafter have, own, hold, claim or have to own or to hold against FRANCHISEES relating to underreporting of gross sales by FRANCHISEES at the Greensburg Center prior to the Effective Date or underpayment of franchise fees due from FRANCHISEES associated with the Greensburg Center prior to the Effective Date.

5.    FRANCHISEES agree to cooperate with FRANCHISORS, if needed, to switch over the telephone accounts for the Centers to FRANCHISORS' designated agent.

6.    FRANCHISEES represent and warrant that FRANCHISEES have conferred with their counsel concerning this Settlement. FRANCHISEES are not acting under any economic duress by executing this Settlement Agreement.

7.    Except to the extent superseded by federal law, this Agreement and all rights and obligations hereunder, including, but not limited to, matters of construction, validity and performance, shall be governed by and construed in accordance with the laws of the State of Pennsylvania. The parties consent to the jurisdiction and venue of the courts of general jurisdiction of Montgomery County, Pennsylvania and to the United States District Court for the Eastern

District of Pennsylvania, and agree that any legal proceeding arising out of or connected in any way to this Agreement shall be brought only in such courts and not in any other court. THE PARTIES HERETO WAIVE THEIR RIGHT TO REQUEST A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY COURT OF LAW, TRIBUNAL, OR OTHER LEGAL PROCEEDING ARISING OUT OF OR INVOLVING THIS AGREEMENT.

8. Each party hereto agrees to execute all such further documents and instruments and to do all such further things as any other party may reasonably request in order to give effect to and to consummate the transactions contemplated hereby.

9. The parties agree that the terms of this Agreement and release shall remain confidential and shall not be disclosed to third parties, except as may be required by law or by court order.

10. This Agreement is the entire agreement of the parties with respect to the subject matter hereof and supersedes all other prior understandings and agreements whether written or oral. This Agreement may be amended only by a writing signed by the parties.

IN WITNESS WHEREOF, intending to be legally bound, the undersigned execute this AGREEMENT on the day and date first set forth above.

_____
WITNESS

COTTMAN TRANSMISSION SYSTEMS, LLC

BY: _____ (SEAL)
Richard Basch, President

_____
WITNESS

AAMCO TRANSMISSIONS, INC.

BY: _____ (SEAL)
Mike Sumsky, Vice President

_____
WITNESS

_____ 
Michael Gano, individually

_____
WITNESS

MG AUTOMOTIVE, INC.

BY: _____ (SEAL)
Michael Gano, President

_____
WITNESS

412 AUTOMOTIVE, L.P.

BY: _____ (SEAL)
Michael Gano, President

FEDEX OFFICE     5101

**Exhibit "A"**

# PROMISSORY NOTE

$15,000.00

June __ , 2010

FOR VALUE RECEIVED and as documented in the attached Settlement Agreement of even date herewith, the undersigned, Michael Gano  ("Borrower") and 412 Automotive, L.P. ("Co-Borrower"), for good and valuable consideration as set forth in the Settlement Agreement of even date herewith, does hereby promise to pay to COTTMAN TRANSMISSION SYSTEMS, LLC ("Holder"), the principal sum of Fifteen thousand dollars ($15,000.00), bearing zero percent (0%) interest, payable in two (2) consecutive monthly installments of one thousand dollars  ($1,000.00) commencing July 15, 2010, with the remaining balance of Thirteen thousand dollars ($13,000.00) due on September 15, 2010.  Notwithstanding the foregoing, should either of the Centers referenced in the attached Settlement Agreement of even date herewith be sold prior to September 15, 2010, the entire remaining balance shall become immediately due and payable to Holder.

Payment of this Note shall be made in lawful money of the United States of America, as at the time of such payment is legal tender for payment of public and private debts; payment shall be made to the Holder at 201 Gibraltar Rd., Suite 100, Horsham, PA 19044 or such other place as the Holder may designate in writing.  Holder may initiate payment through Electronic Funds Transfer from Borrower's financial institution as designated in the Electronic Debit Authorization form executed by Borrower.  Borrower shall have the right to prepay any and all amounts due hereunder without penalty.

If undersigned shall default in the payment of this Note for a period of more than ten (10) business days when due, then the Holder may declare this Note and all other agreements, including but not limited to the Franchise Agreement, in effect between Borrower and Holder or any of its parents, subsidiaries and affiliates immediately in default.

If Holder believes in good faith that the prospect of payment is at any time substantially impaired, the Holder shall accelerate the date of this Note and demand immediate payment in full of the total sum of this Note.

Notwithstanding the foregoing interest rate, if Borrower shall default in the payment of this Note, interest shall accrue at the lesser of Eighteen percent (18%) per year or the highest amount permissible by law.

None of the rights and remedies of Holder hereunder shall be waived, or affected, by failure to delay in exercising them.  All remedies conferred on Holder, or any other instrument or agreement shall be cumulative and not exclusive.

If any action is commenced to enforce the collection of this Note, the undersigned agrees to

pay Holder's reasonable costs of collection, including reasonable attorney's fees in such action.

The undersigned and each endorser of this Note, hereby waive presentment, demand, notice, protest and all other demands and notices required or permitted hereunder and by law in connection with the delivery, acceptance, performance, default or endorsement of this Note, assents to any extension or postponement of the time of payment of any other indulgence, to any substitution, exchange or release of collateral and/or to the addition or release of any other party or person primarily or secondarily liable on this Note.

The undersigned hereby authorizes and empowers any attorney or attorneys or the prothonotary or clerk of the court of competent jurisdiction, upon the occurrence of any default hereunder, to therein confess or enter judgment against the undersigned in favor of Holder for all sums due or to become due from Borrower to Holder hereunder, with costs of suit and release of errors, and reasonable attorney's fees. Reasonable attorney's fees shall be One thousand five hundred dollars ($1,500.00) or 18%, whichever is greater. Such authority and power shall not be exhausted by an exercise thereof from time to time, as often as there is occasion therefor.

The undersigned also hereby declare that they are not in the military service of the United States or any State or Territory or United States ally, and that they have an income of more than Ten thousand dollars ($10,000.00) a year at the time of this signing, that this is a commercial transaction, and that they knowingly and intelligently waive any opportunity to have a hearing at which the burden of proving fault, execution of obligation, amount due, and other elements necessary to execution would be on the creditor.

The terms, conditions, rights and obligations set forth in this Note are in no way intended to be construed as an extinguishment or limitation of the terms, conditions, rights and obligations set forth in any previous documents between the parties hereto.

This Promissory Note has been entered into and shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

_____          _____
WITNESS                                    Michael Gano, individually

                                           MG AUTOMOTIVE, INC.
_____          BY: _____ (SEAL)
WITNESS                                    Michael Gano, President

                                           412 AUTOMOTIVE, L.P.
_____          BY: _____ (SEAL)
WITNESS                                    Michael Gano, President

6